## BELDING v. KING.

(Circuit Court of Appeals, Second Circuit. February 11, 1908.)

### No. 147.

1. WRIT OF ERROR—REVIEW—RULINGS NOT EXCEPTED TO.

Rulings to which, as appears from the record, no exception was taken will not be reviewed on writ of error.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, §§ 1432–1468.]

2. FRAUD—MISREPRESENTATIONS—PROOF—SUFFICIENCY.

In an action for fraudulent representations respecting property sold, plaintiff must prove that the statements were false when made, that defendant knew that they were false, and that plaintiff relied upon them.

3. SAME—ACTION FOR FRAUDULENT REPRESENTATIONS — APPLICABILITY OF REMEDY.

That after selling corporate stock to plaintiff, defendant abstracted part of the assets of the company does not strengthen plaintiff's action against him for alleged fraudulent representations in the sale.

4. SAME.

Where plaintiff agreed with defendant's agent and others for the purchase of the stock of a company, and that stock in another company held by such company should be sold and it was sold to defendant, plaintiff may not complain of such sale, in an action against defendant for alleged fraudulent representations in a subsequent sale to plaintiff of stock of the first-mentioned company.

In Error to the Circuit Court of the United States for the Southern District of New York.

Robert B. Honeyman, for plaintiff in error.
Boothey & Baldwin, for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The only question to be considered upon this review is presented by the fourth assignment of error—namely, "That the court erred in dismissing the plaintiff's cause upon the merits." The first two assignments of error relate to rulings to which, as appears from the record, no exception was taken. The third assignment relates to a ruling regarding the measure of damages which is, of course, immaterial if the court was correct in holding that no cause of action was established. Has the plaintiff proved the cause of action stated in the complaint?

The complaint alleges that in May, 1899, the plaintiff purchased from the defendant 1188 shares of the capital stock of the Eureka Silk Company for $13,379. That prior to this sale the defendant, who was president of the Eureka Company, represented to the plaintiff that the company was solvent and in a sound financial condition and that it owned 1225 shares of the common stock of the Summit Thread Company, which was worth its par value—$122,500. The complaint alleges further, on information and belief, that at the date of the purchase of the stock of the Eureka Company by the plaintiff, that company was insolvent and its stock worthless and in the latter part of the year 1901 it was placed in the hands of receivers by the United States Circuit

Court for the District of Massachusetts, and in due course its business was wound up and its assets distributed among its creditors, the stockholders receiving nothing. That the representations made by the defendant regarding the value of the stock of the Eureka Company and of the Summit Thread Company were false and were made knowingly by the defendant with intent to deceive the plaintiff and to induce him to purchase the stock of the Eureka Company. That the plaintiff believed the said representations and placed his sole reliance thereon in purchasing the stock as aforesaid. Judgment is demanded for $13,379, the amount paid for the Eureka stock. In short, the action is one to recover damages for false representations in the sale of stock. We think there has been a total failure to prove the cause of action stated in the complaint.

There is testimony that, in the spring of 1899, the defendant told the plaintiff that the Eureka Company was in good financial condition and that the Summit Thread Company was a good concern paying dividends and having at least $90,000 in quick assets. The difficulty is that there is no proof of the falsity of these statements when made, or that the defendant knew them to be false, or that the plaintiff relied upon them.

Conceding, for the moment, that the defendant subsequently abstracted part of the assets of the Eureka Company, the situation is no more favorable to the plaintiff. Of course an action would lie under such conditions, but it would not be one based on fraudulent representations. If A sells his furnished house to B for $5,000 on the truthful representation that the real property is worth $3,000 and the personal property $2,000, and subsequently removes the furniture, it is manifest that although B can enforce several remedies against A, an action for false and fraudulent representations is not among the number. It is, then, a sufficient answer to the proposition that the plaintiff was damaged by the sale to the defendant of the Eureka Company's stock in the Summit Company, that no cause of action based on this transaction is alleged.

The negotiations between the parties culminated in the agreement of March 11, 1899, which is signed by the plaintiff, Dimmock, Armstrong and Thompson, who represented the defendant, and is entitled, "Memorandum of agreement in lieu of all previous agreements." Clause No. 1 provides that the parties are to buy each, substantially, one-quarter of the preferred and common stocks of the Eureka Company for $25 per share for the preferred stock, the common stock to be given as a bonus. Clause No. 2 provides that when the stock is so acquired the Eureka Company will sell its plant and all its property except merchandise, bills receivable and Summit Thread stock, to the American Silk Manufacturing Company for $240,000. Clauses Nos. 3 and 4 relate to unimportant matters of detail. Clause No. 5 is as follows:

"The stock of the Summit Thread Co., owned in the Eureka Co., will be treated separately from the silk business of the Eureka Co. Whatever amount said parties may receive from the disposition of said stock above

the sum of ten thousand ($10,000) dollars, shall be so divided that said Thompson shall receive one-half and each of the other parties one-sixth thereof."

In this agreement the sale of the Summit stock for $10,000 was clearly contemplated and the plaintiff, who signed the paper, must have been aware that the sale was, to say the least, a possible contingency.

The defendant, pursuant to a resolution of the board of directors of the Eureka Company bought the stock for $10,000, Armstrong, one of the parties to the agreement of March 11, offering the resolution for the sale. The plaintiff when asked to give his understanding of the clause No. 5 of the March agreement, testified as follows:

"Mr King was to pay—I don't remember particularly about this, but I have this idea—that Mr. King was to pay $10,000, and then whatever it may have sold for, over and above $10,000, one-half of it was to go to his representative, Mr. Thompson, and the other half to go to Armstrong, Dimmock and Belding."

We are unable to see how the completion of a transaction of which the plaintiff was aware and in which he acquiesced by becoming a party to the agreement, can now be construed as a fraud upon his rights, and particularly are we unable to see how it can be available in an action based upon false and fraudulent representations.

We deem it unnecessary to characterize the sale of the Summit stock to King further than to say that in our opinion it is not relevant to any issue, upon which liability depends, which is raised by the pleadings.

The judgment is affirmed with costs.